# Commonwealth *v.* Moll, Appellant.

*Criminal law—Concealing birth of bastard child—Misdemeanor—Act of March 31, 1860, secs. 89 and 180, P. L. 382—Charge.*

1. A person who aids and abets a woman in concealing "the death of any issue of her body, male or female, which, if it were born alive, would by law be a bastard, so that it may not come to light, whether it was born dead or alive," is guilty of a misdemeanor under secs. 89 and 180 of the Act of March 31, 1860, P. L. 382.

2. In such a case where there is positive evidence of the innocence of the defendant, a conviction will be set aside where the charge as a whole does not offer a calm, judicial amd impartial presentation of the case to the jury, and minimizes the effect of evidence that the prisoner was a man with a good reputation for chastity.

Argued Nov. 16, 1908. Appeal, No. 199, Oct. T., 1908, by defendant, from judgment of O. & T. Franklin Co., Feb. T., 1908, No. 5, on verdict of guilty in case of Commonwealth v. D. C. Moll. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Indictment for aiding and abetting a woman in concealing the birth of her bastard child.

The facts are stated in the opinion of the Superior Court.

Verdict of guilty, upon which the prisoner was sentenced to two years and six months in the penitentiary.

*Errors assigned* were various instructions quoted in the opinion of the Superior Court.

*O. C. Bowers*, with him *Irvin C. Elder*, for appellant.—This offense was unknown to the common law, and is purely of statutory creation. Inasmuch as the mother of a bastard is the person most interested in concealing the fact that she has been delivered of a child, and therefore being the person having the strongest motive to put it out of the way, it is not strange that the provisions of the act are directed against her and her alone. Of course, anyone who aids, assists or advises the putting away of a bastard child, is guilty of an offense against the law, but of a much more serious offense than the one provided against in this act: Frey v. Com., 83 Ky. 190; Stamper v. Com., 7 Bush, 612.

There was no sufficient evidence of the concealment of the death to support a conviction of either defendant: Reg. v. Sleep, 9 Cox's Criminal Law Cases, 559; Reg. v. George, 11 Cox's Criminal Law Cases, 41; Com. v. Clark, 2 Ash. 105.

The language and tone of the charge to the jury was of such a character as to unduly affect the jury against the defendants or either of them: Linn v. Com., 96 Pa. 285; Coxe v. Deringer, 82 Pa. 236; Com. v. Cleary, 135 Pa. 64; Heine v. Com., 91 Pa. 145; Hanney v. Com., 116 Pa. 322; Com. v. Cohen, 36 Pa. Superior Ct. 263.

*D. Edward Long*, district attorney, for appellee.—In misdemeanors there are no accessories, either at common law or under the statutes of this commonwealth, all being regarded in law as principals. Therefore Moll is indicted as a principal and jointly with Hessler.

That one, personally and alone, incapable of committing a

certain crime, may be convicted of aiding and abetting in the commission of the crime, is not peculiar to the charge contained in the indictment in this case: 2 Wharton's Am. Criminal Law, sec. 1134; Commonwealth v. Green, 19 Mass. 380; State v. Sprague, 4 Rhode Island, 257; Regina v. Bird and Nash, 2 Car. and Kirwan, 817; Rex v. Douglas and Hall, 7 Car. and P. 644.

The commonwealth contends that there is ample evidence of concealment to support the verdict. The charge was not improper: Com. v. Van Horn, 188 Pa. 143; Com. v. Cohen, 36 Pa. Superior Ct. 263; Com. v. Belserawitz, 35 Pa. Superior Ct. 77.

OPINION BY MORRISON, J., April 12, 1909:

The defendant was jointly indicted, tried and convicted with Florence Hessler under the provisions of the Act of March 31, 1860, sec. 89, P. L. 382, which reads: "If any woman shall endeavor privately, either by herself or the procurement of others, to conceal the death of any issue of her body, male or female, which, if it were born alive, would by law be a bastard, so that it may not come to light, whether it was born dead or alive, or whether it was murdered or not, every such mother being convicted thereof, shall suffer an imprisonment by separate or solitary confinement at labor, not exceeding three years," etc.

Before pleading, the defendant's counsel moved to quash the indictment, mainly on the ground that Moll was charged with no offense known to the law. The learned court below sustained the indictment and in an opinion filed, held: First, that the offense was not a felony at common law and not being made so by statute and the act itself being silent as to whether it is a felony or a misdemeanor, it must be held to be a misdemeanor, citing State v. Murphy (R. I.), 16 L. R. A. 550. In this conclusion we agree with the court below. Section 180 of the Act of March 31, 1860, P. L. 382, reads: "And every person who shall counsel, aid or abet the commission of any misdemeanor, punishable under this act, for whom no punishment has heretofore been provided, shall be liable to be proceeded against and punished as the principal offender." The learned court below,

in support of the indictment, quoted from Bishop's New Criminal Law, vol. 1, sec. 689: "The peculiar nature of a crime may be such that it can be committed only by a personal doing of the forbidden thing. Probably crimes of this sort are not numerous. Thus, rape, a boy physically incapable, or a woman, may become a principal offender in rape by abetting a capable person. Surely, therefore, most other offenses can be committed in like manner." Section 1135, vol. 2 of the same work states it thus: "Persons present, abetting, where rape is felony, and a fortiori where it is misdemeanor, are principals in equal legal guilt with the direct perpetrator."

In Rhode Island, the statute provides as follows (sec. 86): "Every woman who shall be convicted of concealing the birth of any issue of her body which if born alive would be a bastard, so that it may not be known whether it was born dead or alive, or of concealing the death of any infant bastard child born of her body, so that it may not be known whether such child was murdered or not, shall be imprisoned not exceeding ten months, or be fined not exceeding $300." Section 120 of the same statute reads: "Every person who shall aid, assist, abet, counsel, hire, command or procure another to commit any crime or offense, shall be proceeded against as principal, or as accessory before the fact, according to the nature of the offense committed. And upon conviction shall suffer a like punishment as the principal offender is subjected to by this act."

In State v. Sprague, 4 R. I. 257, David and Cynthia Sprague were charged with concealing the birth of a bastard child, born of the body of Jane Fowle, the said Jane Fowle not being charged with the offense. It was held that the defendants could not be convicted unless upon an indictment which charges the mother of the bastard also with the offense; the words and policy of the act contemplating no such crime, unless the mother be a participator in it. In that case AMES, C. J., said: "Now, we have no doubt but that a person who aids, abets, counsels, commands or procures the commission of this offense, peculiar as it is, and especially as it contemplates, in the language and policy of the statute, the mother as the principal actor in it, may be guilty of it as a principal offender, and of

course, upon an indictment properly framed, be legally convicted of it, as such. It by no means follows, that because the mother alone can be guilty of the actual concealment described in the statute, and that if she be not guilty no other person can be,—that if she be guilty, others may not be guilty as principals, present, in the sense of the law, and aiding and assisting her in the criminal concealment, and participating in and working with her under the criminal intent."

We are of the opinion that the learned court did not err in sustaining the indictment and holding that the defendant Moll and the mother of the bastard child could be jointly indicted, tried and convicted of the offense charged in the indictment. The third assignment of error is dismissed.

The first assignment of error is: "That as to D. C. Moll, the one defendant, there is no evidence in the case which is sufficient to convict him of the crime charged in the indictment." The point embraced in this assignment was refused by the court. A careful consideration of the evidence convinces us that it was sufficient to carry the question of the guilt of Moll to the jury. It is true that the evidence is circumstantial and there is the positive evidence of the defendant and of Florence Hessler, the other defendant, which, if believed by the jury would require a verdict of not guilty as to Moll. But, considering all of the circumstances in evidence, we are not prepared to say that the jury might not have drawn proper and legitimate inferences sufficient to warrant the conviction of Moll. The view we take of the case requires a reversal as to Moll and renders it unnecessary to marshal or comment upon the testimony bearing against him. The first assignment is dismissed.

The fifth, sixth, seventh, eighth, ninth and tenth assignments of error are excerpts from the charge and they ask for a reversal of the judgment as to Moll because of the alleged unfair and improper language of the court therein specified which the learned counsel contends unduly affected and prejudiced the jury against Moll. We have carefully examined the charge as a whole and feel compelled to say that it is not such a calm, judicial and impartial presentation of the case to the jury as is called for, especially in a criminal case where the common-

wealth relies on circumstantial evidence and there is positive evidence of the innocence of the defendant. We do not propose to discuss all of the assignments of error, but will refer to some of them.

Take the sixth: "This child was born in the slop jar, and removed from there to the suit case by the defendant, Florence Hessler, but there were no marks of that about the room. Did not some person clean up that room to some extent before anyone got in there?" The jury might infer from this that the court had in mind that Moll had cleaned up the room, but if the girl was able to take the child out of the slop jar and hide it in the suit case, it is not impossible that she may have cleaned up the room.

Seventh assignment: "Again, he said the girl was sent here because his father was to be moved here, and he intended to rent a house here and make her housekeeper for them, for him and his father. You will ask yourselves the question then, why was not the house procured first? And why was the girl sent here to a hotel, to live in a hotel, while he would find a house? He did not come here for ten days after." When it is recalled that the child was born in the latter part of November and that there is considerable evidence that the girl, Moll and his wife did not expect her to be confined till January or February following, it does not appear so strange that she was sent to the hotel a few days before a house was attempted to be secured. It is in evidence that the girl desired to leave her home and remain away until after her child was born, and she may have been sent to the hotel to gratify her desire. But the learned court intimated nothing of this kind to the jury.

The eighth assignment: "Again, if there was no community of interest between these people, why was it that Moll when he came here happened to strike the very hotel where the girl was stopping? Why was it he inquired there for the girl?" This was very unfair to the defendant, Moll. The evidence shows that the girl went to the hotel with the consent of Moll; that he was to come later and secure a house for her and his father to live in, and of course, he would go to the hotel and inquire for the girl if the facts were as his testimony and hers and Mrs.

Moll's indicates. We sustain the assignments of error from the fifth to the tenth, inclusive.

The eleventh assignment: "I might say further, I think, speaking for myself only, you are to be the judges, that in offenses connected with the gratification of the animal passions a good reputation does not stand us in very much stead. Old King David was supposed to be a man of good reputation, but as he walked upon the roof and saw the woman, he could not restrain himself, and not only did he seek her person, but had her husband killed in order that he might gratify his passion." King David's reputation for chastity was not pertinent in this case and the language of the court was quite improper and out of place, and it may have caused the jury to disregard the evidence of Moll's character. He had offered some competent evidence that he was a man with a good reputation for chastity. It was proved and conceded that he resided with his wife; that they had brought Florence Hessler up from childhood, and the evidence was quite convincing that Moll was not the father of her child but that her trouble was caused by one Harry South. Both she and Moll testified that the latter had never had sexual intercourse with her. It is quite apparent that the commonwealth and the court expected the jury to infer that Moll was the father of the child. In the situation the defendant found himself, we think, it was quite material for him to offer evidence of his good character for chastity. If he convinced the jury that he enjoyed such a reputation, they would not be so likely to believe that he was assisting Florence Hessler in concealing the birth of her bastard child, because, if he was not the father of the child, he would not be so anxious to conceal its birth as he would if the child were his. The testimony in favor of the defendant's good character for chastity was in support of a substantive defense, and if it convinced the jury that the defendant enjoyed a good reputation in that respect, it might have raised, in the mind of the jury, a reasonable doubt which, along with the positive evidence of the defendant and the girl, would have led to the acquittal of Moll. We regard it as highly improper for the court to say to the jury "that in offenses connected with the gratification of the animal passions, a good reputation does

not stand us in very good stead." Then following this with the remarks about old King David was calculated to utterly destroy the effect of the evidence of good reputation as to chastity. There may be some such theory as indicated by the court in the minds of some persons, but under the law, evidence of good reputation for chastity is in support of a substantive defense, and is important, and it should be fairly submitted to the jury and left to them to estimate its worth.

Counsel for the commonwealth argues that Moll's reputation for chastity is irrelevant and immaterial. If it was not relevant and material the court should have excluded it. But, in our opinion, it was both material and relevant.

Counsel for appellant cites Coxe v. Deringer, 82 Pa. 236, and refers to Judge AGNEW's criticism of the charge on p. 258, and also cites Linn v. Com., 96 Pa. 285, where Judge PAXSON said of the charge: "This language is intemperate and unfair. It is many degrees removed from the dignity and impartiality which should mark the judicial character. It is far more objectionable than the charge which this court pointedly condemned in Coxe v. Deringer, 82 Pa. 236, for the reason, amongst others, that Coxe v. Deringer was a civil case, while the issue here involved both infamy and imprisonment."

We do not wish to be understood as holding that the charge in the present case goes to the extreme mentioned in the above-quoted cases. But we do say that the present charge is not of that calm, impartial and dignified character that is called for, especially, in a criminal case involving both infamy and imprisonment. The language quoted in the eleventh assignment is not proper coming from the court to a jury when giving instructions as to the effect of evidence of good character, offered on the part of the defendant. There is nothing in Moll's appeal calling for comment on the second assignment. The fourth assignment is the same as the eleventh. The eleventh assignment is sustained.

The judgment is reversed with a venire facias de novo.

RICE, P. J., PORTER and HEAD, JJ., dissent.